UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-CR-0004-CVE |
| ) | |
| KEVIN MARK DARNOLD, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant Kevin Mark Darnold's Motion in Limine and Brief in Suport [sic] (Dkt. # 23). Defendant seeks to have excluded at trial all testimony and other evidence of any and all communications by him with the Assistant District Attorney for Osage County and the Assistant United States Attorney for the Northern District of Oklahoma. The Court held a hearing on defendant's motion on April 1, 2008. For the reasons set forth below, the Court finds that the motion should be **denied**.

I.

On May 8, 2007, the Osage County Sheriff's Office arrested Kevin Mark Darnold ("Darnold") for driving under the influence ("DUI"). Dkt. # 23-2, at 1. Darnold was a convicted felon at the time of his arrest. Dkt. # 23-4, at 1. During the subsequent inventory search, the arresting officer found, inter alia, a .357 Colt revolver and a box of ammunition on the floor board of a vehicle driven by Darnold. Dkt. # 23-2, at 1. Three days later, on May 11, 2007, Darnold pled guilty in Osage County District Court to DUI and driving with a suspended license. Dkt. # 36-2, at 1-2. The district court sentenced defendant, and he served several months in jail. See id. at 2.

On August 7, 2007, shortly after his release, Darnold phoned the Osage County District Attorney's Office about his .357 Colt revolver that had been confiscated incident to his May 2007

arrest. Dkt. # 23-3, at 2. The call was transferred to Assistant District Attorney Jeff Jones ("Jones"). Dkt. # 36, at 2. Darnold identified himself and then asked for the return of his gun. Jones advised him that there was a federal hold on the gun, and that Darnold should contact the United States Attorney's Office for the Northern District of Oklahoma. Jones testified that he did not believe Darnold was represented by an attorney at the time of their telephone conversation because Darnold had proceeded pro se in his State case and discharged his sentence.

Soon thereafter, Darnold phoned the United States Attorney's Office for the Northern District of Oklahoma and spoke with Assistant United States Attorney Timothy Faerber ("Faerber"). See Dkt. # 23-4. Darnold identified himself and told Faerber that "he had a gun which was seized at his arrest, that he was trying to get it back, and that the Osage County Sheriff's Office would not release it because of a federal hold." Id. Faerber informed Darnold that he could not release the gun because it was evidence in a federal investigation. Id. Surprised at this news, Darnold responded, "What investigation?" Faerber explained that it was an investigation of him for possessing a firearm and ammunition while a convicted felon. Id. Darnold then informed Faerber that he had been convicted only for misdemeanor DUIs in Oklahoma. Id. Faerber asked if Darnold had ever been convicted of a felony in California. Id. Darnold admitted that he had. Id.

Darnold then asked Faerber if there was a way he could legally posses a firearm even though he had a prior felony conviction. Id. Faerber told Darnold that he could possess a firearm if he received a pardon and had his rights to possess a firearm restored. Id. Darnold inquired as to how he could do that. Id. Faerber answered that Darnold would need to consult an attorney. Id. The conversation then ended. Id.

Faerber testified during the in limine hearing that Darnold was not disoriented during their telephone conversation and knew that he was talking to a prosecutor. Faerber knew that Darnold had been arrested for more than twenty DUIs and, thus, that he was familiar with the criminal justice system. Faerber stated that he had no obligation to warn Darnold that his statements could be used against him; no federal indictment naming Darnold had been filed. Faerber did not believe that Darnold was represented by an attorney at the time of their telephone conversation because he knew Darnold had discharged his sentence. Moreover, Darnold was not in custody or otherwise exposed to the compulsory process.

On January 9, 2008, a federal grand jury in the Northern District of Oklahoma returned an indictment against Darnold, charging him with possession of a .357 Colt revolver and ammunition after former felony conviction. See Dkt. # 2. Darnold now seeks to have all testimony and other evidence of any and all telephone discussions with Jones and Faerber excluded from the evidence at trial. Darnold claims that these statements qualify as inadmissible statements made in furtherance of, or related to, plea negotiations under Fed. R. Cr. P. 11(f) and Fed. R. Evid. 410(3) and (4).

**II.**

Statements made by a defendant during plea discussions with an attorney for the prosecuting authority generally are inadmissible under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410(3) and (4). In United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978), the court adopted a two-part test to determine whether a defendant's statements were made in the course of plea discussions. First, a court must determine "whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion." Id. Second, a court must determine "whether the accused's expectation was reasonable given the totality of the objective

3

circumstances." Id. While "[p]lea negotiations are inadmissible, . . . not every discussion between an accused and agents for the government is a plea negotiation." Id. at 1365. A court should exclude such discussions "only when the accused and the government actually engage in plea negotiations." Id.

The Court finds that the prosecution has met its burden of proving that Darnold's discussions with Jones and Faerber were not plea negotiations. See id. at 1366 n.21 (noting that the prosecution "bears the burden of proving that the discussion was not a plea negotiation once the issue has been properly raised."). First, Darnold did not subjectively expect to negotiate a plea. Darnold voluntarily phoned Jones and Faerber about the return of his .357 Colt revolver. He never offered, nor was he asked, to enter a plea. He never asked about any potential sentence, fine, or probation term. He never offered or solicited any concessions or expressed an intent to engage in plea negotiations. Moreover, Darnold could not possibly have been phoning to engage in such negotiations. He had no State charges pending against him because he already had completed his sentence in the Osage County Jail. He had no federal charges pending against him because no indictment had been returned. In fact, he evidenced a complete lack of awareness of the federal investigation. When Faerber informed Darnold that the gun was being held as part of a federal investigation of him, Darnold responded, "What investigation?" Darnold could not have had an actual subjective expectation to negotiate a plea at the time of the discussions because he had nothing to negotiate. He phoned Jones and Faerber in a mere effort to retrieve his gun.

Second, Darnold could not have had an objectively reasonable expectation to negotiate or enter plea discussions if he did not have an actual expectation. Again, at the time Darnold phoned

4

Jones and Faerber, he was not aware of the federal investigation of him. The Court concludes, therefore, that Darnold fails to satisfy the Robertson two-part test.

### III.

Darnold challenges the admissibility of his statements on an alternative ground. He claims that his statements to Jones and Faerber are inadmissible because Jones and Faerber violated the Oklahoma Rules of Professional Conduct during their telephone conversations with Darnold. See Dkt. # 23, at 4-5. Darnold claims that Jones and Faerber violated Rule 3.8(b) when they did not "make reasonable efforts to assure that the accused [was] advised of the right to, and the procedure for obtaining counsel and [was] given reasonable opportunity to obtain counsel." OKLA. STAT. tit. 5, Ch.1, App. 3-A. Darnold claims that Jones and Faerber violated Rule 3.8(c) when they obtained self-incriminating statements from Darnold. See Dkt. # 23, at 5. Darnold claims that Jones and Faerber violated Rule 4.3, as their conduct implied disinterest to a person who was unrepresented by counsel. Id. Darnold further claims that Jones and Faerber violated Rule 4.3 when they gave Darnold legal advice "other than the advice to secure counsel." OKLA. STAT. tit. 5, Ch.1, App. 3-A. Darnold cites United States v. Acosta, 111 F. Supp. 2d 1082 (E.D. Wis. 2000), in support of his argument that his statements are inadmissible.[1]

---

[1] Darnold notes, and this Court agrees, that the Tenth Circuit has yet to address this issue with respect to statements made by an unrepresented party during pre-indictment, non-custodial interviews. See generally United States v. Ryans, 903 F.2d 731, 740 (10th Cir. 1990) (holding that ethical proscriptions against certain communications on the subject of representation with a party knowingly represented, "do not attach during the investigative process before the initiation of criminal proceedings."); United States v. Thomas, 474 F.2d 110, 112 (10th Cir. 1973) (requiring suppression of incriminating statement where the prosecution obtained statement by violating the ethical rules limiting attorneys' communications with represented parties).

The district court in <u>Acosta</u> held that the prosecution's violation of Rule 3.8(b) during custodial interrogation may result in the suppression of defendants' incriminating statements notwithstanding the absence of a constitutional violation. <u>Id.</u> at 1095. The court found that a balancing test should be used to determine admissibility. <u>Id.</u> "The appropriateness of exclusion as a sanction for prosecutors' ethical violations is to be determined on a case by case basis." <u>Id.</u> at 1096. Ultimately, the court declined to suppress the statements because the prosecutors' conduct was not "egregious, highly improper, or unconscionable." <u>Id.</u> at 1097.

On appeal, the Seventh Circuit affirmed the district court's decision. <u>United States v. Olson</u>, 450 F.3d 655, 682 (7th Cir. 2006). Although the Circuit (i) questioned whether the prosecutors actually had violated "any ethical rules" and (ii) noted that "Rule 3.8(b) itself is somewhat ambiguous about its application in the setting of pre-indictment, custodial interrogation," the Circuit nonetheless found that the district court did not abuse its discretion in admitting the evidence. In reaching this conclusion, the Circuit intimated that only a willful or egregious ethical violation occurring during custodial interrogation might mandate suppression. <u>Id.</u> at 682.

Here, Darnold's argument is misplaced. Regardless of whether Jones and Faerber committed ethical violations, Darnold's statements are not suppressible under <u>Acosta</u> because the statements did not occur during custodial interrogation. At the time Darnold <u>voluntarily</u> phoned Jones and Faerber: (1) he was not subject to compulsory process; (2) he was not represented by an attorney; (3) he was not in custody; (4) he had discharged his State sentence; and (5) he had no pending federal charges against him in the Northern District of Oklahoma. The Court concludes, therefore, that Darnold's voluntary pre-indictment statements, made during non-custodial telephone discussions that he initiated with attorneys for the prosecuting authority, are admissible.

**IT IS THEREFORE ORDERED** that Defendant Kevin Mark Darnold's Motion in Limine and Brief in Suport [sic] (Dkt. # 23) is hereby **denied**.

**DATED** this 2nd day of April, 2008.

*Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT